## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOANNA OBUZOR,** | No.  2:23-cv-1488 |
| **Plaintiff,** | |
| **v.** | |
| **JESSE CLAYTON, Police Officer; ROSS KENNEDY, Police Officer;  JOHN DOE 1, Correctional Officer; JANE DOE 2, Correctional Officer; ORLANDO HARPER, Warden of Allegheny County Jail; JASON BEASOM, Deputy Warden; CITY OF PITTSBURGH, PENNSYLVANIA; and ALLEGHENY COUNTY, PENNSYLVANIA.** | **COMPLAINT** **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT

Plaintiff Joanna Obuzor ("Plaintiff" or "Obuzor"), by and through her undersigned counsel, respectfully files the following Complaint against Defendants Jesse Clayton, Ross Kennedy, John Doe 1, Jane Doe 2, Orlando Harper, Jason Beasom, the City of Pittsburgh, and Allegheny County, and states as follows:

## INTRODUCTION

1.      On October 31, 2021, Plaintiff Joanna Obuzor, a 37-year-old Black woman, parked her car on the side of the street after a late evening catching up with her book club. Feeling herself getting tired, Obuzor parked her car on the side of the street to take a nap, in order to avoid any possibility of falling asleep at the wheel.  Around 4:00 a.m. the next morning, she was abruptly woken up by police officers, including Defendants Jesse Clayton ("Officer Clayton") and Ross Kennedy ("Officer Kennedy") (collectively, the "Officers").  Rather than

1

checking on Obuzor to make sure she was alright and sending her on her way, Officers Clayton and Kennedy performed an unwarranted field sobriety test on Obuzor, slammed her against the vehicle, violently arrested her, and drove her to the Allegheny County Jail ("ACJ"), where Obuzor was then stripped down to her bra and skirt and subjected to further excessive force by ACJ Correctional Officers, including use of a taser that left multiple burn marks across her back. During the entire interaction with Officers Clayton, Kennedy, and ACJ Correctional Officers, Obuzor was unarmed and posed no threat to the safety of the officers.

2.      Obuzor spent approximately 15 hours in custody, and left ACJ with several injuries—including burns across her back, a sprained wrist, a torn ligament in her left elbow, a fractured right toe, and extensive bruising.  Defendants' actions also caused, and continue to cause, psychological injury to Obuzor including mental and emotional distress.  For these injuries, Obuzor seeks money damages pursuant to 42 U.S.C. § 1983, as well as injunctive relief.

## PARTIES

3.      **Plaintiff Joanna Obuzor** is a 39-year-old individual who resides in Allegheny County, Pennsylvania.

4.      **Defendant Jesse Clayton** is an individual employed by the City of Pittsburgh, Pennsylvania as a Police Officer, and at all times mentioned herein acted in the course and scope of his employment and under color of state law.  Officer Clayton is sued in his individual capacity.

5.      **Defendant Ross Kennedy** is an individual employed by the City of Pittsburgh, Pennsylvania as a Police Officer, and at all times mentioned herein acted in the course and scope of his employment and under color of state law.  Officer Kennedy is sued in his individual capacity.

6.     **Defendant John Doe** ("Doe 1") is an individual employed by ACJ as a Correctional Officer, and at all times mentioned herein acted in the course and scope of his employment and under color of state law.  Doe 1 is sued in his individual capacity.

7.     **Defendant Jane Doe** ("Doe 2") is an individual employed by ACJ as a Correctional Officer, and at all times mentioned herein acted in the course and scope of her employment and under color of state law.  Doe 2 is sued in her individual capacity.  Defendants Does 1-2 are collectively referred to as the "Doe Defendants."

8.     **Defendant Orlando Harper** ("Harper") is an individual employed by ACJ as the Warden, and at all times mentioned herein acted in the course and scope of his employment and under color of state law.  Harper is sued in his individual capacity.

9.     **Defendant Jason Beasom** ("Beasom") is an individual employed by ACJ as the Chief Deputy Warden, and at all times mentioned herein acted in the course and scope of his employment and under color of state law.  Beasom is sued in his individual capacity.  Defendants Harper, Beasom, and Does 1-2 are collectively referred to as the "ACJ Defendants."

10.    **Defendant Allegheny County, Pennsylvania** (the "County"), charged in its official capacity as a state actor, was and still is a county fully organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania and is responsible for overseeing the policies, procedures, and/or training of employees at the Allegheny County Jail.

11.    **Defendant City of Pittsburgh, Pennsylvania** (the "City"), charged in its official capacity as a state actor, was and still is a municipality fully organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania and is responsible for overseeing the policies, procedures and/or training of the City of Pittsburgh Police Department.

12.     Defendants are jointly and severally liable for their unconstitutional and tortious conduct set forth herein.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Obuzor alleges claims arising under 42 U.S.C. § 1983 for violations of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.  This Court has authority to award attorneys' fees pursuant to 42 U.S.C. § 1988.

14.     Venue is proper under 28 U.S.C. § 1391(b)(2), as the events giving rise to Obuzor's claims occurred in Allegheny County in the Western District of Pennsylvania.

## FACTS

15.     Plaintiff Joanna Obuzor is a 39-year-old Black woman who resides in Allegheny County, Pennsylvania, and works as the Director of Operations at the Pittsburgh Cultural Trust.

16.     On October 31, 2021, Officers Clayton and Kennedy unlawfully arrested and used excessive force on Obuzor, resulting in severe physical injuries, as well as psychological injuries including humiliation and mental and emotional distress.  Thereafter, Obuzor was wrongfully imprisoned by the ACJ Defendants, who subjected her to further excessive use of force and deprived her of necessary medical treatment, resulting in severe and ongoing physical injuries as well as mental and emotional distress.

### A.   Officers Clayton and Kennedy Unlawfully Arrested Obuzor After Finding Her Sleeping in Her Parked Vehicle on the Side of the Street.

17.     On October 30, 2021, Obuzor attended a Halloween-themed social gathering organized by her book club.  As part of her costume, Obuzor wore a skirt and historical, Victorian era-style corset.  The corset constricted the movement of her neck, torso, arms, and shoulders.

4

18.    Obuzor arrived at the book club event in the Edgewood/Swissvale neighborhood of Pittsburgh between approximately 7:30 PM and 8:00 PM.  She had dinner at the event and drank three alcoholic beverages over the course of approximately four and a half hours.

19.    Obuzor left the event just after 12:00 AM.  While driving home from the event, Obuzor became tired and pulled into a street-parking space on Fifth Avenue in the Oakland neighborhood of Pittsburgh to get some rest.  After parking her vehicle on Fifth Avenue, Obuzor turned off the vehicle and fell asleep.

20.    Several hours later, around approximately 4:00 AM, Obuzor woke up to several police cruisers and an ambulance surrounding her car.  There were at least two white male officers in full uniform standing by her driver's side window: Officers Clayton and Kennedy.

21.    Obuzor opened her door to speak with the Officers.  Officers Clayton and Kennedy asked Obuzor if she needed any medical attention, but Obuzor declined, stating that she was simply tired.

22.    Officers Clayton and Kennedy then asked Obuzor if she had a friend or family member that she could call to drive her home.  Obuzor responded that she did not, and assured the Officers that she could drive herself home.

23.    Despite Obuzor's insistence that she did not need someone to drive her home, Officer Clayton requested that she look for her phone to contact a friend or family member.  Obuzor complied with Officer Clayton's request.  She searched throughout her vehicle and rummaged through her purse, but was unable to locate her phone.

24.    Concerned that rummaging through her purse—and making any sudden movements as a Black woman—could potentially make Officers Clayton and Kennedy nervous,

Obuzor stopped searching for her phone, placed her hands on the steering wheel where Officers Clayton and Kennedy could see them, and said, "Thank you for not shooting me."

25.     Officer Clayton, who was visibly upset by Obuzor's comment, responded to Obuzor, "You're one of those."  The Officers' tone shifted markedly, and they asked Obuzor to step out of the vehicle.  Obuzor complied.

26.     Officer Clayton then asked Obuzor if she had been drinking, and she informed Officer Clayton that she had drank the prior evening, but that she was not intoxicated.

27.     Officers Clayton and Kennedy did not ask Obuzor any follow-up questions, and instead requested that Obuzor perform a horizontal gaze nystagmus test used to identify any involuntary jerking in Obuzor's eye movement.

28.     Horizontal gaze nystagmus tests are often unreliable and inaccurate, and the results of these tests can be affected by many other factors unrelated to alcohol consumption, including medical conditions, eye problems, or injuries.

29.     Officer Kennedy conducted the nystagmus test by instructing Obuzor to follow a pen with her eyes while Officer Clayton observed.  Obuzor complied with Officer Kennedy's request and completed the test, and immediately noticed Officer Clayton's visible disappointment.  Notably, when Officer Kennedy commented that she failed the test because of shaky movement in one eye, Officer Clayton's disappointment went away, and he smiled.

30.     Upon information and belief, Officer Kennedy misrepresented Obuzor's performance on the nystagmus test in order to fabricate probable cause for arrest.

31.     At no point did the Officers ask Obuzor to consent to a blood or breathalyzer test to measure Obuzor's blood alcohol content, and did not conduct such test.

32.     After conducting only the nystagmus test, Officer Clayton informed Obuzor that she was under arrest and ordered Obuzor to turn around.  Before Obuzor could comply with Officer Clayton's order, Officer Clayton aggressively shoved Obuzor's right shoulder to spin her around and forcefully slammed her into the side of the vehicle.  Officer Clayton proceeded to aggressively pull Obuzor's arms behind her back to place her in handcuffs; however, due to Obuzor's restrictive corset, she did not have full range of her arms and had limited motion to place her arms behind her back.  Despite notifying Officer Clayton that his attempts to pull her arms behind her back were hurting her, Officer Clayton continued to yank back Obuzor's arms. As a result of Officer Clayton's brazen use of excessive force, Obuzor suffered a torn ligament in her left elbow and extensive bruising.

33.     At this point, Obuzor pleaded with passersby to help her, but no help arrived.

34.     Officer Kennedy was close enough to Officer Clayton to observe Officer Clayton pulling back on Obuzor's arms and slamming her into the vehicle; however, Officer Kennedy did not intervene to protect Obuzor from Officer Clayton's violent and abusive behavior.

35.     Obuzor then asked Officers Clayton and Kennedy why they were arresting her; however, neither Officer responded.

36.     After handcuffing Obuzor, the Officers forcefully pulled her by the arms to put her in the backseat of the police cruiser.  Obuzor once again asked why she was being arrested but received no response.

37.     At no point during the arrest did the Officers inform Obuzor of the charges against her.

**B. <u>Officers Does 1-2 Stripped and Tased Obuzor Upon Her Arrival to Allegheny County Jail.</u>**

38.    After arriving at ACJ, Officer Clayton turned off his body-worn camera and told Obuzor to step out of the police cruiser.

39.    Obuzor refused to leave the police cruiser until Officer Clayton turned his body-worn camera back on.  Officer Clayton complied with Obuzor's request, and sarcastically asked Obuzor if she "was happy now."

40.    The Officers then escorted Obuzor inside of the ACJ, where ACJ corrections officers, including the Doe Defendants (collectively, the "ACJ COs"), were present.

41.    Once Obuzor arrived at the ACJ entry room, ACJ COs asked Obuzor to face the wall and place her hands on the wall above her head, to which Obuzor complied.  Obuzor then turned her head slightly to ask the ACJ COs a question.  Because she was wearing the restrictive corset, her hand lifted off of the wall as she turned her head.

42.    As soon as Obuzor's hand moved, Doe 1 tackled Obuzor to the floor.  The ACJ COs, including Doe 1, restrained Obuzor and tased her multiple times across her back, despite the fact that she did not pose any threat to any of the ACJ COs: she was unarmed, fully restrained, and lying face down on the ground.

43.    ACJ COs then cut off Obuzor's corset while she was lying face down and restrained on the ground, leaving her in only a bra and skirt, and pulled Obuzor to her feet.  Obuzor coughed as she was pulled to her feet, and in response, ACJ COs placed a spit shield over Obuzor's head.

44.    The ACJ COs roughly escorted Obuzor down the hallway to a holding cell, and left her alone in the cell, without shoes, partially undressed, and with visible burn marks across her back, for approximately five hours.

45.     While Obuzor waited in the cell, two medical professionals came to visit her.  She answered all medical questions as prompted, but received no medical treatment for her burns, despite the fact that the burns were clearly visible.

46.     After the medical professionals left her cell, Obuzor noticed that her right ankle and calf were beginning to swell.  Based on her prior medical history and experience, Obuzor knew that this swelling was related to her high blood pressure, so she used the call button in her holding cell to seek medical attention.

47.     When the ACJ COs, including Officer Doe 2, responded to the call button, Obuzor informed them that she needed to take her daily medication for high blood pressure.  In response, Officer Doe 2 warned her against "push[ing] the [call] button," and threatened to detain her further if she sought help again, stating: "I'll see that you're here until tomorrow."

48.     Obuzor never received her blood pressure medication, despite requesting medical attention several times.

49.     After the first five hours, Obuzor was finally given a t-shirt, and she remained in the cell for another six hours.

50.     While Obuzor was waiting in the holding cell for processing, another ACJ CO, Officer Harrigan, brought over his supervisor to introduce him to Obuzor.  The two officers remarked on the extensive bruising visible on Obuzor's arms, which were developing from the Doe Defendants' and Officer Clayton's violent and abusive force used against her.

51.     The supervising officer asked if the bruising came from the Officers or ACJ COs. Although the injuries likely came from both parties, Obuzor, in fear of reprisal from any ACJ COs in earshot, responded that the bruises came from the Officers only.

52.     After 11 hours, at approximately 2:00 PM, Obuzor was escorted to a new holding cell where she waited to see the judge.

53.     While waiting in the new holding cell, Obuzor asked an ACJ CO for an update on when she could expect to see the judge.  The ACJ CO told Obuzor to "shut the fuck up," then stepped closer to the cell, lowered his voice, and threatened to "beat [her] ass."

54.     Obuzor was finally released from ACJ between 7:00 PM and 7:30 PM—approximately 15 hours after she first arrived.  Although the City of Pittsburgh initially brought charges against her for, *inter alia*, public drunkenness, all charges were ultimately dropped.

## C. Defendants Harper and Beasom Failed to Adequately Train and Supervise ACJ COs.

55.     As Warden, Defendant Harper is, and at all relevant times was, responsible for the oversight of ACJ, which includes promulgating and enforcing policies, practices, and procedures concerning use of force and officer training.

56.     As Chief Deputy Warden, Defendant Beasom is, and at all relevant times was, responsible for promulgating and enforcing policies, practices, and procedures concerning use of force.  He also oversees the investigation of ACJ COs for use of force on individuals confined at ACJ.

57.     Both Harper and Beasom failed to adequately train and supervise ACJ COs on how to comply with their constitutional duty to refrain from use of excessive force when interacting with individuals during the booking process.

58.     Both Harper and Beasom have a pattern and practice of failing to supervise the ACJ COs with respect to compliance with their constitutional duty to refrain from use of excessive force.

59.     Officer Doe Defendants were acting pursuant to, and within the scope of, the policies and procedures established, promulgated, and enforced by Defendants Harper and Beasom when Officer Doe Defendants engaged in excessive use of force against Obuzor.

60.     Harper and Beasom's inadequate policies and procedures, coupled with their failure to train and supervise ACJ COs on excessive use of force, were the proximate cause of Obuzor's physical and psychological injuries resulting from Officer Does 1-2's violent and abusive behavior.

<u>**COUNT I**</u>
<u>**Excessive Use of Force in Violation of the Fourteenth Amendment (42 U.S.C. § 1983)**</u>
**Defendants Clayton and Kennedy**

61.     Obuzor repeats and realleges the allegations set forth in the paragraphs above as if fully set forth and restated herein.

62.      42 U.S.C. § 1983 provides an action in law and equity against anyone who under color of state law deprives another of rights secured by the Constitution and law.

63.     Obuzor has a constitutional right to be free from unreasonable seizures of the person, including the clearly established right to be free from the use of excessive force.

64.     At all times relevant hereto, Officers Clayton and Kennedy were acting under color of state law.

65.     Officers Clayton and Kennedy failed to use any form of lesser force or any de-escalation techniques prior to slamming Obuzor on the side of the vehicle and pulling her arms behind her back to the point where she suffered a torn ligament in her left elbow.

66.     The Officers' decisions to slam Obuzor into the side of the vehicle and aggressively pull her arms behind her back were objectively unreasonable and violated her right to be free from the use of excessive force.

67.     The Officers' use of force was disproportionate under the circumstances because Obuzor posed no threat or danger to the Officers or any other person, and was neither actively resisting arrest nor attempting to flee.

68.     Any reasonable officer in the position of Officers Clayton and Kennedy would have known that the force used against Obuzor was objectively unreasonable and unconstitutional.

69.     Upon information and belief, Officers Clayton and Kennedy purposefully and/or intentionally used such excessive force without justification.

70.     As a result of the Officers' actions, Obuzor suffered severe physical injuries, including a sprained wrist, a torn ligament in her left elbow, and extensive bruising.  Obuzor has been subjected to substantial pain and suffering, and was required to undergo extensive physical therapy for her injuries.

71.     As a result of the Officers' actions, Obuzor also suffered psychological injury, including humiliation, as well as mental and emotional distress.

72.     Obuzor has incurred and may continue to incur substantial expenses in order to obtain medical care for her injuries.

73.     Obuzor is entitled to compensation for such injuries pursuant to 42 U.S.C. § 1983 in an amount to be proven at trial, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest, and any such further costs allowable by federal law.

## COUNT II
## Excessive Use of Force in Violation of the Fourteenth Amendment (42 U.S.C. § 1983)
### Defendants Harper, Beasom, and Doe 1

74.     Obuzor repeats and realleges the allegations set forth in the paragraphs above as if fully set forth and restated herein.

75.     42 U.S.C. § 1983 provides an action in law and equity against anyone who under color of state law deprives another of rights secured by the Constitution and law.

76.     Obuzor has a constitutional right to due process of law, including the clearly established right to be free from the use of excessive force.

77.     At all times relevant hereto, Defendants Harper, Beasom, and Doe 1 were acting under color of state law.

78.     While Obuzor was in the custody and care of ACJ, the ACJ COs, including at least Officer Doe 1, tackled Obuzor to the floor and tased her multiple times while she was unarmed, fully restrained, and lying face down on the ground.

79.     The ACJ COs, including at least Officer Doe 1, failed to use any form of lesser force or any de-escalation techniques prior to tackling and tasing Obuzor.

80.     Officer Doe 1's use of force in tackling and tasing Obuzor, rather than attempting an alternative, lesser means of force or de-escalation technique, constitutes force that is objectively unreasonable and in violation of Obuzor's clearly established right to be free from excessive force under the Fourteenth Amendment.

81.     Officer Doe 1's use of force was disproportionate under the circumstances because Obuzor posed no threat or danger to any of the officers or any other person, and was neither actively resisting arrest nor attempting to flee.

82.     Any reasonable officer in the position of Officer Doe 1 would have known that the force used against Obuzor was objectively unreasonable and unconstitutional.

83.     Upon information and belief, Officer Doe 1 purposefully and/or intentionally used such excessive force without justification.

84.     Defendants Harper and Beasom are liable for their individual involvement in failing to train and supervise ACJ COs, including Officer Doe 1.

85.     Defendants Harper and Beasom are liable for their individual involvement in failing to enforce policies and/or procedures which existed or should have existed relating to the use of excessive force by ACJ COs, including Officer Doe 1.

86.     Defendants Harper and Beasom acted with objective unreasonableness and/or deliberate indifference to the need to train ACJ COs, including Officer Doe 1, and to the consequences of failing to train and prevent ACJ COs from using excessive force on detainees.

87.     Defendants Harper and Beasom's failure to train ACJ COs, including Officer Doe 1, resulted in the unlawful assault on Obuzor and violated Obuzor's right to be free from the use of excessive force under the Fourteenth Amendment.

88.     As a result of Officer Doe 1's actions, Obuzor suffered severe physical injuries, including burns across her back, a fractured toe, and extensive bruising.  Obuzor has been subjected to substantial pain and suffering, and was required to undergo extensive physical therapy for her injuries.

89.     As a result of Officer Doe 1's actions, Obuzor suffered psychological injury, including humiliation, as well as mental and emotional distress.

90.     Obuzor is entitled to compensation for such injuries pursuant to 42 U.S.C. 1983 in an amount to be proven at trial, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest, and any such further costs allowable by federal law.

## COUNT III
### Unlawful Arrest in Violation of the Fourth Amendment (42 U.S.C. § 1983)
### All Defendants

91.   Obuzor repeats and realleges the allegations set forth in the paragraphs above as if fully set forth and restated herein.

92.   42 U.S.C. § 1983 provides an action in law and equity against anyone who under color of state law deprives another of rights secured by the Constitution and law.

93.   Obuzor has a clearly established constitutional right to be free from unreasonable searches and seizures, including the right to be free from arrest without probable cause.

94.   At all times relevant hereto, Defendants were acting under color of state law.

95.   On October 31, 2021, Officers Clayton and Kennedy arrested Obuzor without probable cause.  Obuzor exhibited no signs of intoxication when the Officers arrived at the scene, and in the absence of such signs, the Officers had no reasonable grounds to believe that Obuzor was intoxicated.

96.   The Officers failed to offer Obuzor a blood test or a breathalyzer test to determine her blood alcohol content.

97.   The Officers violated Obuzor's clearly established constitutional right to be free from unreasonable searches and seizures, including the right to be free from arrest without probable cause, by arresting her without probable cause of public drunkenness.

98.   The ACJ Defendants' further detainment of Obuzor based on her arrest without probable cause was in violation of her clearly established Fourth Amendment right to be free from unreasonable searches and seizures.

99.   As a result of Officers Clayton's and Kennedy's actions, and the ACJ Defendants' subsequent detainment, Obuzor suffered humiliation, as well as mental and emotional distress.

100.   Obuzor is entitled to compensation for such injuries pursuant to 42 U.S.C. § 1983 in an amount to be proven at trial, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest, and any such further costs allowable by federal law.

**COUNT IV**
**Deprivation of Necessary Medical Treatment in Violation of the Fourteenth Amendment**
**(42 U.S.C. § 1983)**
**Defendants Harper, Beasom, and Doe 2**

101.   Obuzor repeats and realleges the allegations set forth in the paragraphs above as if fully set forth and restated herein.

102.   42 U.S.C. § 1983 provides an action in law and equity against anyone who under color of state law deprives another of rights secured by the Constitution and law.

103.   Obuzor has a constitutional right to due process of law, including the clearly established right to be free from punishment such as the deprivation of necessary medical treatment.

104.   At all times relevant hereto, Defendants Harper, Beasom, and Officer Doe 2 were acting under color of state law.

105.   While in the custody and care of ACJ, Obuzor suffered from high blood pressure-related swelling, a medical condition requiring access to medication.  Despite having knowledge of Obuzor's need for medical attention, Officer Doe 2 showed deliberate indifference to Obuzor's medical needs by refusing her access to blood pressure medication and threatening to detain her for a longer period of time if she continued to seek help.  Such unlawful actions put Obuzor at severe risk of additional harm and undue suffering.

106.   Officer Doe 2, as a direct and proximate result of her deliberate indifference to Obuzor's medical needs, caused Obuzor to suffer continuous injuries, such as bruising, swelling, and elevated blood pressure, while in ACJ's custody and care.

16

107.   Officer Doe 2's deprivation of necessary medical treatment constitutes punishment in violation of Obuzor's clearly established right to due process under the Fourteenth Amendment.

108.   Defendants Harper and Beasom are liable for their individual involvement in failing to train and supervise ACJ COs, including Officer Doe 2.

109.   Defendants Harper and Beasom are liable for their individual involvement in failing to enforce policies and/or procedures which existed or should have existed relating to ACJ COs' response to requests for necessary medical treatment.

110.   Defendants Harper and Beasom acted with objective unreasonableness and/or deliberate indifference to the need to train ACJ COs, including Officer Doe 2, and to the consequences of failing to train ACJ COs on appropriate responses to requests for necessary medical treatment.

111.   Defendants Harper and Beasom's failure to train ACJ COs, including Officer Doe 2, violated Obuzor's right to due process of law.

112.   As a result of Defendants Harper, Beasom, and Doe 2's actions, Obuzor suffered severe physical injuries, as well as emotional and mental distress.

113.   Obuzor is entitled to compensation for such injuries pursuant to 42 U.S.C. § 1983 in an amount to be proven at trial, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest, and any such further costs allowable by federal law.

**COUNT V**
**Failure to Train and Supervise**
**(42 U.S.C. § 1983)**
**Defendants City of Pittsburgh, Pennsylvania and Allegheny County, Pennsylvania**

114.   Obuzor repeats and realleges the allegations set forth in the paragraphs above as if fully set forth and restated herein.

115.    Upon information and belief, the City and the County are both state entities who were acting under color of law when Obuzor was subjected to excessive use of force and false imprisonment in Pittsburgh, Pennsylvania on October 31, 2021.

116.    Obuzor has a clearly established constitutional right to be free from unreasonable searches and seizures, including the right to be free from arrest without probable cause.

117.    Obuzor has a constitutional right to due process of law, including the clearly established right to be free from the use of excessive force.

118.    On October 31, 2021, Obuzor was arrested without probable cause, despite exhibiting no signs of intoxication when the Officers arrived at the scene, and in the absence of such signs, the Officers had no reasonable grounds to believe that Obuzor was intoxicated.

119.    While in the custody of the City, Obuzor was subjected to the use of excessive force when she was slammed into the side of the vehicle and had her arms pulled behind her back to the point where she suffered a torn ligament in her left elbow.

120.    The Officers' decisions to slam Obuzor into the side of the vehicle and aggressively pull her arms behind her back were objectively unreasonable and violated her right to be free from the use of excessive force.

121.    While confined at the ACJ, Obuzor was subjected to further excessive use of force when she was tackled to the ground and tased multiple times.

122.    The City and the County knew or should have known that its police officers could conduct arrests without probable cause resulting in the violation of the federally protected civil rights of the City of Pittsburgh's and the County of Allegheny's citizens, including Obuzor.

123.    The City and the County knew or should have known that its police officers and correctional officers could use excessive force resulting in the violation of the federally protected civil rights of the City of Pittsburgh's and the County of Allegheny's citizens, including Obuzor.

124.    The City and the County knew or should have known that refraining from such force would protect the civil rights of the citizens of the City of Pittsburgh and the County of Allegheny, including Obuzor.

125.    The City and the County failed to implement a policy, procedure, or training as to both arrests without probable cause and the use of force when detaining individuals.  This deliberately indifferent failure to adopt or enact governmental policies, practices, or trainings necessary to prevent constitutional violations has resulted in a violation of Obuzor's federally protected civil rights and/or the civil rights of citizens of the City of Pittsburgh and the County of Allegheny.

126.    As a proximate result of their inactions, the City and the County deprived Obuzor of the rights, remedies, privileges, and immunities granted to every person, secured by 42 U.S.C. § 1983, subjected her to an arrest without probable cause in violation of the Fourth Amendment to the United States Constitution.

127.    As a proximate result of their inactions, the City and the County deprived Obuzor of the rights, remedies, privileges, and immunities granted to every person, secured by 42 U.S.C. § 1983, subjected her to excessive use of force in violation of the Fourteenth Amendment of the United States Constitution.

128.    As a proximate result of the City and the County's conduct, Obuzor suffered direct physical harm due to the wrongful arrest, confinement, and excessive use of force by the City and the County.

19

129.     Obuzor is entitled to compensation for such injuries pursuant to 42 U.S.C. § 1983 in an amount to be proven at trial, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest, and any such further costs allowable by federal law.

**COUNT VI**
**False Arrest (State Law Claim)**
**All Defendants**

130.     Obuzor repeats and realleges the allegations set forth in the paragraphs above as if fully set forth and restated herein.

131.     Obuzor has a clearly established right under Pennsylvania law to be free from arrest without probable cause.

132.     On October 31, 2021, Officers Clayton and Kennedy arrested Obuzor without probable cause.  Obuzor exhibited no signs of intoxication when the Officers arrived at the scene, and without such signs, the Officers had no reasonable grounds to believe that Obuzor was intoxicated.

133.     The Officers failed to offer Obuzor either a blood test or a breathalyzer test to determine her blood alcohol content.

134.     The ACJ Defendants' further detainment of Obuzor based on her arrest without probable cause was in violation of her right under Pennsylvania law to be free from arrest without probable cause.

135.     As a result of Officers Clayton's and Kennedy's actions, and the ACJ Defendants' subsequent detainment, Obuzor suffered humiliation, as well as mental and emotional distress.

136.     Obuzor is entitled to compensation for such injuries under Pennsylvania law.

**COUNT VII**
**Civil Conspiracy (State Law Claim)**
**Defendants Clayton and Kennedy**

137.    Obuzor repeats and realleges the allegations set forth in the paragraphs above as if fully set forth and restated herein.

138.    Officers Clayton and Kennedy jointly committed an unlawful arrest and unconstitutional use of force upon Obuzor, and neither Officer restrained or prevented the other from engaging in such unlawful and unconstitutional behavior.

139.    Upon information and belief, Officers Clayton and Kennedy acted in concert with one another in the unlawful arrest of Obuzor, and developed, agreed upon, and executed a common plan, scheme, or design to fabricate probable cause to arrest Obuzor by misrepresenting her performance during the nystagmus test.

140.    Upon information and belief, Officers Clayton and Kennedy acted in concert with one another in the unlawful assault on Obuzor, and developed, agreed upon, and executed a common plan, scheme, or design to use excessive force against Obuzor.

141.    Upon information and belief, Officers Clayton and Kennedy further agreed to fabricate a false narrative depicting Obuzor as aggressive and uncooperative in order to excuse and/or justify their unconstitutional excessive use of force upon Obuzor.

142.    At all relevant times, Officers Clayton and Kennedy acted in concert with one another through an express or implied agreement to commit the unlawful acts described herein, with the principal purpose of inflicting injury upon Obuzor and depriving Obuzor of her constitutional right to be free from excessive use of force and her right of due process.

143.    Obuzor's injuries and deprivation of her constitutional rights were the natural and foreseeable consequences of the Officers' conspiracy alleged herein.

144.    The Officers are jointly and severally liable for the injuries caused by their co-conspirator.

145.    As a result of the civil conspiracy developed, entered into, and executed by Officers Clayton and Kennedy, Obuzor suffered substantial physical and psychological injury, as well as a deprivation of her constitutional rights.

**COUNT VIII**
**Assault and Battery (State Law Claim)**
**Defendants Clayton, Kennedy, and Doe 1**

146.    Obuzor repeats and realleges the allegations set forth in the paragraphs above as if fully set forth and restated herein.

147.    Officer Doe 1 attempted to cause, or intentionally, knowingly, or recklessly caused physical injury to Obuzor when Officer Doe 1 tackled Obuzor to the ground, restrained her, and tased her across her back multiple times, resulting in severe physical injuries.

148.    Officers Clayton and Kennedy attempted to cause, or intentionally, knowingly, or recklessly caused physical injury to Obuzor when Officers Clayton and Kennedy violently shoved Obuzor, slammed her into the side of the vehicle, and aggressively pulled back her arms, resulting in severe physical injuries.

149.    Obuzor's physical injuries are a direct and proximate result of Defendants Clayton, Kennedy, and Doe 1's actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joanna Obuzor requests the following relief:

(a)    An order declaring that the wrongful conduct described in this Complaint violated Obuzor's rights under the Fourth and Fourteenth Amendments to the United States Constitution;

(b)     An award of compensatory and punitive damages in an amount to be determined at trial;

(c)     An award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988;

(d)     An order granting appropriate injunctive relief, including implementation of training protocols to prevent future conduct similar to the conduct complained of herein;

(e)     Any such other and further relief as this Court may deem appropriate and just.

## <u>JURY DEMAND</u>

Plaintiff respectfully requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 17, 2023

Respectfully,

/s/ David R. Osipovich_____
David R. Osipovich (PA ID No. 306687)
Anna Shabalov (PA ID No. 315949)
Jessica L.G. Moran (PA ID No. 325912)
Kira M. Geary (PA ID No. 330334)
**K&L GATES LLP**
K&L Gates Center
210 Sixth Ave.
Pittsburgh, PA 15222
Tel: (412) 355-6578
david.osipovich@klgates.com
anna.shabalov@klgates.com
jessica.moran@klgates.com
kira.geary@klgates.com

-and-

Kelsi E. Robinson (PA ID No. 330452)
**K&L GATES LLP**
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Tel: (310) 552-5060

kelsi.robinson@klgates.com

***Attorneys for Plaintiff Joanna Obuzor***