**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| JOANNA OBUZOR, | ) |
|       Plaintiff, | ) No. 2:23-cv-1488 |
| v. | ) |
|  | ) JURY TRIAL DEMANDED |
| JESSE CLAYTON, ET AL., | ) |
|       Defendants. | ) |

**DEFENDANT CITY OF PITTSBURGH'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

Defendant, City of Pittsburgh, respectfully submits this Brief in support of its Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6).

**I.   Introduction**

Plaintiff, Joanna Obuzor ("Ms. Obuzor") does not state a claim upon which relief may be granted against Defendant, City of Pittsburgh ("City"). Therefore, this Court should dismiss Count III (42 U.S.C. § 1983 Unlawful Arrest), Count V (42 U.S.C. § 1983 Failure to Train), and Count VI (state law false arrest) against the City. Ms. Obuzor's Complaint fails to allege, through evidence of past incidents, that the City has deliberately disregarded a risk of constitutional violations or that there was a training program that would have prevented her alleged constitutional right, which is required to state a *Monell* claim under either theory of municipal liability. Moreover, Ms. Obuzor fails to make a causal connection between her alleged constitutional deprivation and a specific deficiency in City of Pittsburgh police training. Because Ms. Obuzor's Complaint fails to state a viable *Monell* claim, both § 1983 claims against the City (Count III and Count V) should be dismissed. Furthermore, Ms. Obuzor's state law claim for false arrest is barred by the

Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8542(a)(2). Therefore, Count VI must be dismissed as well.

**II.    Background[1]**

On October 31, 2021, after a night of drinking, Ms. Obuzor was arrested by Officers Ross Kennedy and Jesse Clayton for, *inter alia*, public drunkenness. ECF No. 1 ¶¶ 18, 32, 54. Officers Clayton and Kennedy initially encountered Ms. Obuzor in her car at approximately 4:00am, on Fifth Avenue in Oakland. *Id.* at ¶¶ 19–20. Ms. Obuzor claims to have met the officers first when she "woke up to several police cruisers and an ambulance surrounding her car." *Id.* at ¶ 20. First, Officers Clayton and Kennedy "asked [Ms.] Obuzor if she needed any medical attention. *Id.* at ¶ 21. Next, Officers asked her if "she had a friend of family member that she could call to drive her home," Ms. Obuzor claims in her Complaint that she did not.[2] Ms. Obuzor and then failed a field sobriety test and was placed under arrest. *Id.* at ¶¶ 32, 22, 23. Ms. Obuzor was placed in handcuffs during her arrest.

Ms. Obuzor claims that her arrest was not because she failed the field test, but rather because she told Officers Clayton and Kennedy, "Thank you for not shooting me." *Id.* at ¶¶ 24–25. During the course of her arrest, Ms. Obuzor alleges that Officer Clayton "aggressively shoved [Ms. Obuzor's] right shoulder . . . and forcefully slammed her into the side of the vehicle." *Id.* at ¶ 32. She then alleges that her arms were "aggressively pull[ed] . . . behind her back to place her in handcuffs." *Id.* Ms. Obuzor attributes the police officers' "yanking" to the restrictive corset she

---

[1] Defendant City summarizes and accepts as true facts alleged in Ms. Obuzor's Complaint for purposes of this Motion to Dismiss only. Defendants believe discovery will reveal facts that directly contradict many of the allegations in Ms. Obuzor's Complaint, such as claims that Ms. Obuzor was parked when in fact bystanders and EMS personnel located her slumped over in the driver's seat of her car while the car was engaged in the "drive" gear on Fifth Avenue in Oakland.

[2] Defendant City anticipates that body camera video will reveal that Ms. Obuzor said the exact opposite of what is alleged in this paragraph. After Officers asked her over 20 times to call for a safe ride home Ms. Obuzor is seen on video stating more than once that "she has many friends" who could pick her up.

was wearing, which "limited [her] motion," and meant "she did not have full range of her arms." *Id.* Ms. Obuzor alleges crying for help as passersby ignored her, and that Officers Clayton and Kennedy "forcefully pulled her by the arms to put her in the backseat of the police cruiser." *Id.* at ¶ 36. She also claims that the Officers never informed her of the charges against her. *Id.*

Following her arrest, Ms. Obuzor was transported to the Allegheny County Jail ("ACJ"), where she alleges she was subjected to further excessive force when she was tackled by Correctional Officers, tased "multiple times," "roughly escorted," and denied medical treatment. *Id.* at ¶¶ 38–40, 42–44, 48. Ms. Obuzor was released from the ACJ at approximately 7:00pm on October 31st. *Id.* at ¶ 54. The criminal charges against Ms. Obuzor were ultimately dismissed at a preliminary hearing outside the presence of the police officer involved in teh case. *Id.*

### III. Standard of Review

To survive a motion to dismiss, complaints must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must allege facts sufficient to "'raise a right to relief beyond a speculative level.'" *Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Though courts must accept all well-pleaded facts as true, this obligation does not extend to legal conclusions that are "couched as . . . factual allegation[s]." *Twombly*, 550 U.S. at 555. Moreover, plaintiffs "[can]not attempt to use discovery as a fishing expedition to determine the existence of . . . facts necessary to establish a legally adequate [claim]." *White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. 2013).

### IV. Argument

### A. Ms. Obuzor fails to state a claim for *Monell* liability against the City of Pittsburgh.

Ms. Obuzor's Complaint brings three claims[3] against the City. First, a *Monell* claim for "unlawful arrest," second, a claim for "Failure to Train and Supervise," and third, a state law claim for false arrest. The claims against the City should be dismissed at this early stage because the Complaint fails to allege any facts showing a pattern of deliberate indifference, a causal connection between the City's alleged failure to train and s. Obuzor's alleged constitutional injury, and fails to state a claim that overcomes the City's immunity under Pennsylvania's Political Subdivision Tort Claims Act.

"A municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Rather, a plaintiff must allege that a municipal policy, custom, or practice was the "moving force" behind the alleged constitutional deprivation. *Id.* at 694. Municipal liability under § 1983 on a failure to train theory is recognized "in limited circumstances," and municipal culpability under such a theory is "tenuous." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality's failure to train employees "must amount to deliberate indifference to the rights of persons with whom [the untrained employees] come into contact." *Id.* To sufficiently plead deliberate indifference, Ms. Obuzor must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees

---

[3] Paragraph 117 under Ms. Obuzor's "failure to train" claim uses the term "due process." ECF No. 1 ¶117. However, Ms. Obuzor's Complaint simply recites these words without any relation to her other claims or the facts of the case. Thus, Defendant City argues that Ms. Obuzor's Complaint does not allege a Due Process claim that must be addressed in this motion and that this paragraph is a threadbare recital of an element of an unrelated cause of action. If this Court should find Ms. Obuzor's Compliant states a procedural due process claim, the City specifically denies that any argument in its Motion or Brief should constitute an admission or waiver of any facts or issues related to this claim.

mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).

### 1. Ms. Obuzor's Complaint does not demonstrate deliberate indifference by the City in failing to train police officers on use of force or lawful arrest practices.

The Third Circuit requires that § 1983 claims against municipalities "'contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs.'" *Freedman v. City of Allentown*, 853 F.2d 1111, 1114 (3d Cir. 1988) (quoting *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir. 1981)); *see also Rotolo v. Charleroi*, 532 F.2d 920, 922 (3d Cir. 1976) ("Plaintiffs in civil rights cases are required to plead facts with specificity"); *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) ("Simply paraphrasing section 1983 . . . fails to satisfy the rigorous standards of culpability and causation necessary to state a claim for municipal liability.").

Furthermore, plaintiffs must allege facts sufficient to show that the municipality deliberately disregarded a known risk of constitutional injury. A single incident of excessive force, without any proof of the nature of the use of force training employed by the municipality, cannot form the basis of *Monell* claim. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Typically, the Third Circuit has required plaintiffs to allege a pattern of incidents, similar to the incident that is the basis for the plaintiff's complaint, in order to establish that a defendant disregarded a known risk. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Though the Supreme Court has recognized a narrow exception to this general rule, a single incident is almost always insufficient to demonstrate a failure to train unless the risk is "so obvious" and the harm very likely to occur. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *see also Oklahoma City*, 471 U.S. at 832 ("[A]

single incident of police misbehavior by a single policeman is insufficient as *sole* support for an inference that a municipal policy or custom caused the incident.") (Brennan, J., concurring).

Applying these principles, courts in the Third Circuit routinely reject *Monell* failure-to-train claims that do not point to prior instances of similar misconduct. *See Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014); *Deemer v. City of Oil City*, No. 1:19-CV-380, 2021 U.S. Dist. LEXIS 182885 (W.D. Pa. Sept. 24, 2021) (dismissing claim when plaintiff did not allege any facts about police training, or contain allegations of prior misconduct caused by allegedly inadequate supervision and training); *Thivener v. Nero*, No. 22-238, 2023 U.S. Dist. LEXIS 114010, at *5–*6 (W.D. Pa. June 30, 2023) ("Dismissal of Plaintiff's *Monell* claim is also warranted. Plaintiff does not attempt to identify prior, similar incidents revealing a pattern of constitutional violations."). Part of the rationale behind this practice is that courts typically presume employees will follow their oaths and the law, unless "there is a history of conduct rendering this assumption untenable." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).

Vague, unsupported allegations regarding deficient training and conclusory statements do not establish a history of misconduct that put a municipality on notice to a risk of constitutional injuries. For example, in *Wood*, the complaint alleged that the defendant "fail[ed] to adopt necessary and appropriate policies" on the First Amendment, and that employers "were known to tolerate or encourage Constitutional violations." 568 F. App'x at 103–04. On appeal, the Third Circuit affirmed the dismissal of the *Monell* claim, because the facts alleged did not support an inference that the defendant was on notice of a risk of retaliation for First Amendment protected speech, or that the defendant was deliberately indifferent to that risk. *Id.* at 106. Overall, "mere conclusory allegations . . . that the defendants deliberately elected not to train are not enough to support a constitutional claim." *Freedman*, 853 F.2d at 1117.

These types of conclusory statements make up the entirety of Ms. Obuzor's *Monell* claim. Ms. Obuzor attempts to show the City's deliberate indifference by alleging that the City knew that police officers "could" effectuate arrests using more force than reasonable, and that they "could" make arrests absent probable cause, and that despite this knowledge, it "failed to implement a policy, procedure, or training." ECF No. 1 ¶¶ 122–25. Such allegations and legal conclusions do not support an inference that the City was the "moving force" behind Ms. Obuzor's alleged injury. At most, they attempt to show liability for the City on an unsupportable *respondeat superior* theory. *See Monell*, 436 U.S. at 690. Indeed, Ms. Obuzor does not even allege that police officers in Pittsburgh *do* violate citizens' constitutional rights, just that police officers *could* violate citizens' constitutional rights, and the City should have been aware of this possibility. Ms. Obuzor attempts to assert that City police officers regularly violate their oaths, state law, and the Constitution, and that the City turns a blind eye, but provides no facts to support this statement beyond her own experience.

Additionally, Ms. Obuzor does not point to a pattern of incidents that would make her claims more plausible. She does not identify any other incident of excessive force against an arrestee wearing restrictive clothing. She does not point to any other incidents of excessive force at all. Likewise, she fails to point to prior incidents where a citizen was arrested on public drunkenness charges solely because he or she voiced opposition to the police. And, she does not make any argument that the risk of her alleged injuries occurring was "so obvious" and "so likely" that the City could be said to be deliberately indifferent in failing to train its employees for a situation like the one the Officers encountered with Ms. Obuzor (likely, because, no such argument exists). *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *see also id.* at 390 n.10. Thus, this Court should dismiss Ms. Obuzor's Complaint.

### 2.   Ms. Obuzor's allegations do not plausibly demonstrate that the City caused her alleged injuries.

"To maintain a *Monell* claim pursuant to section 1983, a plaintiff must also plausibly allege that a municipal policy was the proximate cause of her injuries." *G.S. v. Penn-Trafford School District*, No. 20-3281, 2023 U.S. App. LEXIS 17611, at *9 (3d Cir. July 12, 2023). The mere fact that a municipality *could* have had better training does not lead to *Monell* liability. *See Hockett v. Stanga*, No. 2:18-CV-01213, 2023 U.S. Dist. LEXIS 39369, at *15 (W.D. Pa. Mar. 8, 2023). Rather, Ms. Obuzor must demonstrate a *specific* deficiency in the training of municipal employees, and allege that this deficiency has a "causal nexus" with the constitutional injury. *Sample v. Diecks*, 885 F.2d 1099, 1117 (3d Cir. 1989); *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997); *see also Hatfield v. Berube*, 714 F. App'x 99, 103 (3d Cir. 2017) (dismissing *Monell* claim where the complaint made allegations of "improper training," without specifying why the training was improper).

In *Wood v. Williams*, the Third Circuit found that the plaintiff's complaint was deficient in a number of ways, including in its failure to identify a specific policy that caused the plaintiff's alleged injuries. 568 F. App'x 100, 106 (3d Cir. 2014). There, the plaintiff sued her employer for retaliation and violations of her procedural due process rights, and alleged that her employer failed to adopt "policies" that would have avoided the deprivation of employees' constitutional rights. *Id.* at 103–04. Affirming the complaint's dismissal, the court noted that the complaint "did not allege facts showing any particular or specific policy or custom, or how it allowed the constitutional violation to occur." *Id.* at 105. Similarly, in *Hatfield*, the plaintiff alleged that the defendants improperly trained employees about the constitutional rights of parents, HIPAA, and the Mental Health Procedures Act. 714 F. App'x at 103. Though the plaintiff in *Hatfield* had identified an *area* of training that she believed was deficient, she failed to identify *how* the training

was insufficient, and how the insufficiency resulted in her injury. *Id.* Thus, dismissal of the *Monell* claim was proper. *Id.*

Ms. Obuzor's Complaint bears remarkable similarity to the dismissed complaints in *Wood* and *Hatfield*. Ms. Obuzor states that the City "failed to implement a policy, procedure, or training as to both arrests without probable cause and the use of force when detaining individuals." ECF No. 1 ¶ 125. Arguably, the complaint in *Hatfield* came closer to plausibly alleging proximate cause than Ms. Obuzor's Complaint, because the *Hatfield* complaint at least identified specific laws in which the defendant's employees allegedly lacked training. *Hatfield*, 714 F. App'x at 103. Ms. Obuzor's Complaint, on the other hand, falls well short of the mark stating only legal conclusions and threadbare recitations of the elements of her alleged causes of action against the City. Ms. Obuzor does not identify *how* or *why* City of Pittsburgh use of force and probable cause training was insufficient. She does not identify how a change in training could have prevented this situation altogether. Instead, Ms. Obuzor asserts that, someway, somehow, City of Pittsburgh police training caused her injuries. This is not sufficient to demonstrate a "causal nexus" between her alleged constitutional injury and the City's training practices. *Sample*, 885 F.2d at 1117. Because Ms. Obuzor fails to explain the training's alleged deficiencies with any specificity, she provides no basis for an inference that a deficiency in police training did, indeed, cause her injuries. Thus, the *Monell* claim should be dismissed.

### B. To the extent that Count III is not a redundant claim against the City, the claim must still be dismissed because it only asserts *respondeat superior* liability for a Fourth Amendment false arrest claim.

Ms. Obuzor's Count III claim against the City fails as a matter of law. As detailed in the preceding section, a municipality can only be liable under 42 U.S.C. § 1983 for alleged unconstitutional acts that were caused by an official policy or custom. *Monell v. New York Dep't*

9

*of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). In other words, a municipality cannot be liable "solely because it employs a tortfeasor," but only for "[its] own illegal acts." *Id.* at 691; *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Count III does not mention any illegal policies, customs, or procedures by the City, and instead revolves around the actions of Officers Clayton and Kennedy, and the individual Allegheny County defendants. Section 1983 liability for Defendant cannot arise under a *respondeat superior* theory, and that is all that Count III alleges. *Monell*, 436 U.S. at 690.

Even if Ms. Obuzor pled a viable § 1983 against the City in Count III, the claim should be dismissed as duplicative to the claims in Count V. *See Sprauve v. West Indian Co.*, 799 F.3d 226, 235 n.11 (3d Cir. 2015). Any claim against the City of Pittsburgh arises from the same events and under the same theory—Fourth Amendment unlawful arrest—as the claim in Count V, and redundant claims must be dismissed. *See id.*; *see also Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009); *Rogin v. Bensalem Twp.*, 616 F.2d 680, 686 (3d Cir. 1980).

### C.     The Pennsylvania Political Subdivision Tort Claims Act bars the state law false arrest claim against the City of Pittsburgh.

Ms. Obuzor's state law false arrest claim against the City is barred by the Pennsylvania Political Subdivision Tort Claims Act ("the Act"), 42 Pa. C.S. § 8542(a)(2). The Act provides that a municipality may only be liable for the negligent acts of its employees. *Id.* Furthermore, liability only arises under the nine circumstances specifically enumerated by the Act. *See id.* § 8542(b)(1)–(9).[4] False arrest is neither a negligent tort, nor is it specifically outlined in 42 Pa. C.S. § 8542(b)(1)–(9). *See Panichelli v. City of Philadelphia*, No. 03-3435, 2004 U.S. Dist. LEXIS

---

[4] The nine acts for which a municipality may be liable are: (1) vehicle liability; (2) care, custody, and control of personal property in possession of the City; (3) care, custody, and control of real property; (4) dangerous condition of trees, traffic signs, and other traffic controls; (5) dangerous condition of utility service facilities; (6) dangerous condition of streets; (7) dangerous condition of sidewalks; (8) care, custody, and control of animals; and (9) sexual abuse. 42 Pa. C.S. § 8542(b)(1)–(9).

10076, at *5 (E.D. Pa. May 28, 2004). Therefore, the state claim against the City must be dismissed as a matter of law.

## V. Conclusion

For the foregoing reasons, Ms. Obuzor's claims against the City should be dismissed with prejudice.

Respectfully submitted,

City of Pittsburgh Law Dept.
Krysia Kubiak, Solicitor

s/ *Julie E. Koren, Esq.*
Julie E. Koren, Esq. (Pa. ID No. 309642)
Associate City Solicitor
414 Grant Street
Pittsburgh, PA 15219
Julie.Koren@pittsburghpa.gov
*Counsel for Defendants, City of Pittsburgh, Officer Jesse Clayton and Officer Ross Kennedy*